**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:   ltfisher@bursor.com
          jsmith@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD SOO and MATTHEW LAUINGER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>       v.<br><br>LOREX CORPORATION and DAHUA TECHNOLOGY USA INC.,<br><br>                    Defendants. | Case No. 3:20-cv-01437-JSC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Gerald Soo and Matthew Lauinger (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, make the following allegations against Lorex Corporation ("Lorex") and Dahua Technology USA Inc. ("Dahua") (collectively, "Defendants") pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on their personal knowledge.

## FACTUAL BACKGROUND

1. This is a class action lawsuit on behalf of purchasers of several types of Flir security cameras: the Flir FX Indoor Series, Flir FX Outdoor Series, Flir FXC Indoor Series, and Flir FXC Outdoor Series security cameras (collectively, "Flir Cameras"). These consumers lost the ability to use their Flir Cameras when Defendants intentionally "bricked"[1] or rendered consumers' Flir Cameras nonfunctional.

2. Flir Cameras are "premium HD home security camera[s]." A crucial feature of the Flir Cameras was their ability to record security footage to the cloud. The Flir Cameras also offered "Rapid Recap," which was a feature that gave users a condensed, time-stamped time-lapse video of all activity that took place within a specified amount of time.

3. These features were integral to consumers' decisions to purchase the Flir Cameras. Reviewers constantly highlighted the presence of cloud recording and Rapid Recap as the Flir Cameras' premiere features. For instance, a reviewer for c|net, a preeminent technology website, said the following about Flir Cameras:

> Although Flir FX lacks third-party smart-home integrations like IFTTT and SmartThings, it has lots of options. It offers HD video streaming and recording, **free two-day cloud storage**, a microSD card slot for local storage, four-hour battery backup, **a time-lapse video of the day's events**, detection zones and optional accessories that convert the indoor Flir FX into either an outdoor security camera or an action camera.[2]

---

[1] "Brick" means "to render (an electronic device, such as a smartphone) nonfunctional (as by accidental damage, malicious hacking, or software changes)." BRICK, MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/brick (last accessed Apr. 24, 2020).

[2] Megan Wollerton, *Flir FX Review*, C|NET, July 2, 2015, https://www.cnet.com/reviews/flir-fx-review/ (last accessed Apr. 24, 2020) (emphasis added).

4. A reviewer for TechHive also noted Rapid Recap and cloud storage as prominent features of the Flir Cameras:

> The system's other compelling feature is Rapid Recaps, which can condense hours of footage into an activity highlight reel. Rather than a time-lapse digest that presents a linear chronology of events, Rapid Recaps compiles all motion activities within a time frame you specify and compiles them into a single video. The result is you view all those individual events at once, with timestamps on each moving object to tell you when it occurred.
>
> Flir FX includes complimentary access to Free Cloud Basic, which gives you 48 hours of video storage and three RapidRecaps per month.[3]

5. Finally, a reviewer for a tech blog, The Gadgeteer, highlighted Rapid Recap as the Flir Cameras' distinguishing feature:

> The FLIR FX works great as a live streaming camera. But where it differs from all the other security cameras I've ever tested is with its RapidRecap feature. With RapidRecap, you can see all the events that were captured for the day in just a couple of minutes.[4]

6. In short, cloud storage and Rapid Recep were among the most important features offered by the Flir Cameras.

7. Both of these features were made possible through the FLIR Secure and Lorex Secure apps (the "Apps"), which the Flir Cameras require to function.

8. The Flir Cameras were manufactured by Defendant Lorex, a subsidiary of Defendant Dahua. Lorex was sold to Dahua by Lorex's previous parent company, FLIR Systems, Inc., in 2018.[1] Lorex also manages the Apps, which upon information and believe is done at the direction of Dahua.

9. The Flir Cameras continued to be sold and supported from 2015 through August 2019.

10. On August 15, 2019, Lorex announced that Flir Cameras would no longer be supported by the Apps "due to a change in technology providers." This was the result of Lorex's technology provider, OzVision, ceasing to provide P2P functionality and services that were used by all Flir

---

[3] Michael Ansaldo, *Flix FX Review*, TECHHIVE, Nov. 9, 2015, https://www.techhive.com/article/3000639/flir-fx-review-this-security-camera-needs-work-to-compete-in-a-crowded-category.html (last accessed Apr. 24, 2020).
[4] Julie Streitelmeier, *Flix FX Security Camera Review*, THE GADGETEER, June 16, 2015, https://the-gadgeteer.com/2015/06/16/flir-fx-security-camera-review/ (last accessed Apr. 24, 2020).

Cameras. As a result of this cessation in services, the Flir Cameras could no longer connect to the Apps.

11. Because the Flir Cameras require the Apps to function, cutting off App support caused the Flir Cameras to cease working entirely. Accordingly, all Flir Cameras are now worthless.

12. Defendants changed technology providers knowing that such a decision would cause the Flir Cameras to cease functioning.

13. Since changing technology providers, Defendants have not created their own P2P software to replace OzVision that would continue to provide support for Flir Cameras, or otherwise partnered with another third-party vendor.

14. This is not a situation where the Flir Cameras were complete and operational when sold, but wore out or broke over time because of use and wear and tear. Instead, they became worthless due to Defendants' post-sale decision to not secure a replacement for OzVision or implement other necessary steps to provide P2P functionality.

15. Lorex noted that consumers "may be eligible for a free Lorex Active Deterrence Wi-Fi replacement camera or a Lorex.com store discount of US$120.00 … per FX/FXC camera."

16. However, neither of these remedies are adequate. As explained more fully below, customers must choose between an inferior replacement camera—which in any event appears to be no longer available—or a store credit far less than what the Flir Cameras cost.

17. As for the first option, the replacement camera lacks the same functionality as the Flir Cameras. The chart below compares the features of the various Flir Cameras with the replacement camera shown in the far right with the green column. Notably, the replacement camera lacks cloud recording or Rapid Recap, which as described above were among the most important features offered by Flir Cameras.

//
//
//
//

| Series | FX Indoor Series | FX Outdoor Series | FXC Indoor Series | FXC Outdoor Series | Active Deterrence WiFi series |
|---|---|---|---|---|---|
| Model Numbers | FXV101-Hx / FXP101-H | FXV101-Wx | FS21F / FS21 / FS21FBK / FXC12BK / FXC21 / FXC32BK / FXCX2 | FXC13V / FXC33V | LNWCM22Y |
| Indoor / Outdoor | Indoor Only | Outdoor Only | Indoor Only | Outdoor Only | Indoor / Outdoor |
| Resolution | 1080p | 1080p | 2K | 2K | 1080p |
| Compression | H.264 | H.264 | H.264 | H.264 | H.264/H.265 |
| Active Deterrence | No | No | No | No | Yes, Warning LED's + triggered Audible Siren |
| Voice Assistance Compatibility (US/CDN/Mex only) | No | No | No | No | Amazon Alexa / Google Assistant |
| Apple TV / Chromecast Compatibility (US/CDN/Mex only) | No | No | No | No | Yes |
| No Monthly Fees | Yes, optional services | Yes, optional services | Yes, optional services | Yes, optional services | Yes |
| Field of View | Up to 160 degrees (Horizontal) | Up to 160 degrees (Horizontal) | Up to 155 degrees (Diagonal) | Up to 155 degrees (Diagonal) | Up to 135 degrees (Diagonal) |
| Night vision Range | Up to 33ft | Up to 65ft | Up to 40ft | Up to 60ft | Up to 65ft |
| Cloud Recording | Yes | Yes | Yes | Yes | No but planned for 2020 |
| Rapid Recap | Yes | Yes | Yes | Yes | No |
| Temperature / Humdity Sensor | Yes | No | No | No | No |
| Battery Backup | Yes | Yes | No | No | No |
| Accessories | Dash / Bike / Sport Mount / Outdoor Housing | No | No | No | No |
| Mounting positions | Wall and Tabletop | Wall and Ceiling | Wall and Tabletop | Wall and Ceiling | Wall, Ceiling and Tabletop |
| Dimensions | With Base: 2.9 x 2.3 x 4.7 in / 72 x 60 x 121mm (WxDxH) | Wall Mounted: 3.8 x 8.1 x 3.8 in / 96 x 205 x 95mm (WxDxH) | 2.3 x 2.3 x 3.7 in / 58 x 58 x 94mm (WxDxH) | Wall Mounted: 3.1 x 6.9 x 3.1 in / 79 x 175 x 79mm (WxDxH) | With Tabletop Mount: 3.4× 4.2 × 5.0" / 86 × 107 × 125mm (WxDxH) |

18. The replacement cameras are also only worth $130, significantly less than what Plaintiffs paid for their Flir Cameras. In any event, the link to what is supposed to be the replacement camera did not work, foreclosing this option altogether.

19. The second option of a $120 store credit is likewise inadequate because that amount is significantly less than what Plaintiffs paid for their Flir Cameras. Further, no Lorex camera currently supports cloud functionality for recording, and therefore consumers must also purchase a Network Video Recorder ("NVR") to have the same cloud functionality as the Flir Cameras. All NVRs that Lorex offers are priced far above $120. Moreover, no Lorex camera supports Rapid Recap or an equivalent technology. Finally, the offer for store credit expired February 2020.

20. Notably, Defendants do not offer a cash refund. Defendants' notice only provides consumers with the option to receive a replacement camera or store credit, both of which are inadequate remedies for the reasons laid out above.

**FLIR or Lorex brand FX/FXC Series Wi-Fi Cameras**

**FLIR FX, FLIR Secure and Lorex Secure apps will no longer be supported as of Aug 15th, 2019.**

You may be eligible for a free Lorex Active Deterrence Wi-Fi replacement camera or a Lorex.com store discount of US$120.00 (or $160 CAD) per FX/FXC camera.
View Replacement Camera Comparison

If you require a store discount, please contact Lorex sales department at (1-888) 425-6739.

For replacement, please enter your account email and camera's Device ID into the request form below to check your eligibility.

For any questions about the **Up Program** please call Lorex Tech Support at (1-888) 425-6739.

**FX/FXC Replacement Request Form**

1. Account Information
Account Email (email address used to sign into the app)

2. Device Information
Device ID        Serial Number
e.g. fxc0012X3X45    e.g. ID12345678912    [Remove Device]

[Add another device]

[Request product replacement]
[Request store credit]

If your device eligibility could not be validated, please contact Lorex customer service at (1-888) 425-6739. If it is determined that you are eligible for a free replacement unit or credit, only one will be provided per eligible Device ID and serial number. A photo clearly displaying the state of the device may be necessary to receive a replacement unit or credit. Proof of purchase may also be required. A maximum of 6 replacements will be provided per shipping address. This offer does not apply to resellers, distributors and other channel partners. For details please call your Lorex sales representative.

**RapidRecap** and **Cloud Storage** will no longer be supported as of Aug 15th, 2019. To learn more, please visit our Rapid Recap and Cloud Recording Subscriber FAQ.

21. To add insult to injury, sometime after this lawsuit was first filed, Defendants ended their replacement program. Any consumer who elected not to take Defendants' inferior replacement "remedy" is now stuck with a worthless Flir Camera, for which they have no method of recompense.

22. In short, Defendants intentionally rendered non-functional the Flir Cameras of Plaintiffs and other members of the putative Class by eliminating support for the Apps. Then, instead of making things right with Plaintiffs and Class Members, Defendants put their own profits first by temporarily offering two remedies that are less than the value of the Flir Cameras and therefore inadequate. By doing so, Defendants unjustly enriched themselves at the expense of Plaintiffs and other Class members.

23. Plaintiffs bring this action on behalf of the Class for restitution and all other available relief under the following causes of action: (i) trespass to chattels, (ii) unjust enrichment, (iii) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (iv)

violation of New York General Business Law Section ("GBL") 349, and (v) violation of New York GBL § 350.

**PARTIES**

24. Plaintiff Gerald Soo is a citizen of California, residing in Alameda County. Mr. Soo purchased his first two Flir Cameras in April 2015 and purchased three more from eBay in February 2017 and January 2018. Each camera cost approximately $200. Mr. Soo still has all five cameras, all of which are the Flir FX Indoor Series. Prior to purchasing the Flir Cameras, Mr. Soo saw and reviewed the features of the Flir Cameras, including that the Flir Cameras had "Cloud Recording" and "Rapid Recap." Mr. Soo's Flir Cameras were functional until August 2019, at which time they were rendered non-functional by Defendants. Mr. Soo's Flir Cameras are now worthless as a result of Defendants' actions and Defendants have been unjustly enriched at Mr. Soo's expense. Further, Mr. Soo was not offered an adequate replacement for his Flir Cameras that provided the same functionality and features.

25. Plaintiff Matthew Lauinger is a citizen of New York, residing in Suffolk County. Mr. Lauinger purchased a Flir Camera, the Flir FX Indoor Series, from DSG Distributors in New York in August 2018 for $399. Mr. Lauinger discarded his Flir Camera after Defendants rendered the Flir Camera non-functional. Prior to purchasing the Flir Camera, Mr. Lauinger saw and reviewed the features of the Flir Cameras, including that the Flir Cameras had "Cloud Recording" and "Rapid Recap." Mr. Lauinger's Flir Camera was functional until August 2019, at which time it was rendered non-functional by Defendants. Mr. Lauinger's Flir Camera is now worthless as a result of Defendants' actions and Defendants have been unjustly enriched at Mr. Lauinger's expense. Further, Mr. Lauinger was not offered an adequate replacement for his Flir Camera that provided the same functionality and features.

26. Defendant Lorex Corporation is a Delaware corporation that has its principal place of business at 999 Corporate Boulevard, Linthicum, Maryland 21090. Defendant Lorex does substantial business in the United States, including in California, and is the owner and operator of the Apps.

27. Defendant Dahua Technology USA Inc. is a California corporation with a principal place of business at 23 Hubble, Irvine, California 92618. Defendant Dahua does substantial business in the United States, including in California.

28. Defendant Lorex is a subsidiary of Defendant Dahua. Prior to acquiring Lorex, Dahua was Lorex's primary original equipment manufacturer of video surveillance products. Lorex also changed is technology provider following its acquisition by Dahua. At all relevant times, Lorex acted as an authorized agent, representative, servant, employee and/or alter ego of Dahua while performing activities including but not limited to the manufacturing and sale of Flir Cameras and the operation of the Apps in the United States and in the State of California.

## JURISDICTION AND VENUE

29. This Court has personal jurisdiction over Defendants. Defendants purposefully avail themselves of the California consumer market and distribute the Flir Cameras to hundreds of locations within this District and thousands of retail locations throughout California, where the Flir Cameras are purchased by thousands of consumers every day. The Court also has personal jurisdiction over Defendant Dahua because it is a California corporation and headquartered in California.

30. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

31. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the manufacturing, distribution, and sale of

the Flir Cameras, and decisions related to rendering the Flir Cameras non-functional, occurred within this District.

## CLASS ALLEGATIONS

32.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased Flir FX Indoor Series, Flir FX Outdoor Series, Flir FXC Indoor Series, and Flir FXC Outdoor Series security cameras (the "Class").  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased Flir Cameras for resale, and the Judge(s) assigned to this case.

33.     Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

34.     At this time, Plaintiffs do not know the exact number of members of the aforementioned Class ("Class Members").  However, given the nature of the claims and the number of retail stores in the United States that sold Flir Cameras, Plaintiffs believe that the Class Members are so numerous that joinder of all members is impracticable.

35.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class Members include:

    (a)     Whether Defendants were required to cease supporting Flir Cameras;

    (b)     Whether Defendants have been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiffs and the Class;

    (c)     Whether Plaintiffs and the Class are entitled to restitution or other equitable relief, and if so, the proper measure of relief.

36. Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Flir Cameras, and Plaintiffs sustained injury from Defendants' wrongful conduct.

37. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Class.

38. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might require Defendants to provide certain equitable relief to Class Members, whereas another might not. In addition, individual actions could be dispositive of the interests of the Class even where certain Class Members are not parties to such actions.

## COUNT I
### Trespass to Chattels

40. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

41. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

42. Plaintiffs and Class Members maintained actual or constructive possession of their Flir Cameras up to and including August 15, 2019, when Defendants rendered the Flir Cameras non-functional.

43. Plaintiffs and Class Members did not consent to Defendants' interference with their Flir Cameras.

44. Defendants' interference was the actual and proximate cause of injury to Plaintiffs and Class Members because it actually and substantially harmed the functioning of the Flir Cameras by rendering the Flir Cameras non-functional. This harm to the functioning of the Flir Cameras

significantly impaired the Flir Cameras' condition, quality, and value. Defendants' interference also permanently deprived Plaintiffs and Class Members of the use of their personal property.

45. Defendants knew and intended that their conduct would cause injury to Plaintiffs and Class Members. Defendants acted with conscious disregard for the rights of Plaintiffs and Class Members.

46. As a result of Defendants' interference with their Flir Cameras, Plaintiffs and Class Members are entitled to recover their actual damages in an amount to be determined at trial, as well as punitive damages.

**COUNT II**
**Unjust Enrichment**

47. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

48. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

49. Plaintiffs and Class Members conferred benefits on Defendants by purchasing the Flir Cameras.

50. Defendants have been unjustly enriched by retaining the revenues derived from Plaintiffs and Class Members' purchases of the Flir Cameras. Retention of those moneys under these circumstances is unjust and inequitable because Defendants rendered the Flir Cameras of Plaintiffs and Class Members non-functional, which caused Plaintiffs and Class Members to suffer a diminution in the value of their Flir Cameras.

51. Retention of those moneys also is unjust and inequitable because, as alleged above, Defendants commenced an inadequate replacement program that offered either (a) a replacement camera that was worth less than the Flir Cameras and had fewer features, such as Cloud Recording and Rapid Recap, or (b) store credit that was worth less than the value of the Flir Cameras. This replacement program has also since elapsed, leaving Plaintiffs and Class Members only with their worthless Flir Cameras.

52. The unjust enrichment claim is not based solely on Defendants' bricking of the Flir Cameras, but also based on Defendants' decision to put their own profits first by offering an inadequate replacement program.

53. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class Members for their unjust enrichment, as ordered by the Court.

## COUNT III
### Violation Of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*

54. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

55. Plaintiff Soo brings this claim individually and on behalf of the members of the proposed Class against Defendants.

56. This claim is based on the following acts and omissions by Defendants: (i) intentionally rendering the Flir Cameras of Plaintiff Soo and Class Members non-functional by depriving the Flir Cameras of App support, (ii) providing an inadequate and temporary refund remedy to Plaintiff Soo and Class Members, and (iii) failing to disclose that App support for the Flir Cameras was contingent on Defendants' contract with OzVision for P2P services, and that there was no guarantee that OzVision would continue to provide P2P services for Defendants.

57. By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* as to the Class, by engaging in unlawful and unfair conduct.

58. Defendants' acts and practices described above also the UCL's proscription against engaging in unfair conduct.

59. By intentionally eliminating App support for the Flir Cameras on August 15, 2019, Defendants rendered the Flir Cameras of Plaintiff Soo and members of the Class non-functional, and did so without any acceptable justification, whether business or otherwise.

60. Defendants' bricking of the Flir Cameras was unfair in that Defendants failed to provide an adequate remedy for their injurious conduct. This conduct by Defendants was

substantially injurious to consumers, offended public policy, and was immoral, unethical, oppressive, and unscrupulous, and the gravity of the conduct substantially outweighed any alleged benefits attributable to such conduct.

61. Defendants financially benefited from rendering the Flir Cameras non-functional to the financial detriment of Plaintiff Soo and Class Members. Plaintiff Soo and Class Members conferred a financial benefit to Defendants by purchasing Flir Cameras. Plaintiff Soo and Class Members were then deprived of the benefit of their bargain with Defendants because Defendants intentionally rendered the Flir Cameras of Plaintiff Soo and Class Members non-functional, which caused Plaintiff Soo and Class Members to suffer a diminution in the value of their Flir Cameras.

62. Plaintiff Soo and Class Members were forced to either (1) lose significant value in their property by virtue of losing the ability to use their Flir Cameras, (2) receive a replacement camera that is worth less than the Flir Cameras and that has fewer features, such as Cloud Recording and Rapid Recap, or (3) receive store credit that is less than the value of the Flir Cameras that they purchased. Further, Plaintiff Soo and Class Members can now no longer receive *any* remedy because Defendants' replacement program has ended, leaving Plaintiffs and Class Members with their worthless Flir Cameras.

63. As a direct and proximate result of Defendants' unfair practices, Plaintiff Soo and Class Members were deprived of their benefit of the bargain with Defendants and have suffered substantial injury in fact, and lost money and/or property. The injuries suffered by Plaintiff Soo and Class Members include, but are not limited to, diminution in the value of their personal property associated with the loss of the functionality of their Flir Cameras.

64. Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

65. As more fully described above, Defendants' failure to disclose that App support for the Flir Cameras was contingent on Defendants' contract with OzVision for P2P services, and there was no guarantee that OzVision would continue to provide P2P services for Defendants, deceived

reasonable consumers into purchasing products that they would not have purchased but for Defendants' omissions.

66. Plaintiff Soo reviewed the packaging and advertising for Flir Cameras, and there was no disclosure that P2P functionality was contingent on continued service from OzVision, or that OzVision could or might discontinue service at any time. Had there been such a disclosure, Plaintiff Soo would not have purchased the Flir Cameras, or would not have purchased it on the same terms.

67. Plaintiff Soo and the other Class members could not have reasonably avoided the injury each of them suffered.

68. Pursuant to California Business and Professional Code § 17203, Plaintiff Soo and the Class seek an order of this Court that includes, but is not limited to, an order requiring Defendants to: (a) provide restitution to Plaintiff Soo and the other Class Members; (b) disgorge all revenues obtained as a result of violations of the UCL; (c) injunctive relief requiring Defendants to restore functionality to the Flir Cameras; and (d) pay Plaintiff Soo's and the Class' attorney's fees and costs.

## COUNT IV
### Violation Of New York General Business Law § 349

69. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

70. Plaintiff Lauinger brings this claim individually and on behalf of Class Members against Defendants.

71. This claim is based on the following acts and omissions by Defendants: (i) intentionally rendering the Flir Cameras of Plaintiff Soo and Class Members non-functional by depriving the Flir Cameras of App support, (ii) providing an inadequate and temporary refund remedy to Plaintiff Soo and Class Members, and (iii) failing to disclose that App support for the Flir Cameras was contingent on Defendants' contract with OzVision for P2P services, and that there was no guarantee that OzVision would continue to provide P2P services for Defendants.

72. By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices, enriching themselves at the expense of Class Members.

73. The foregoing deceptive acts and practices were directed at consumers.

74. Plaintiff Lauinger reviewed the packaging and advertising for Flir Cameras, and there was no disclosure that P2P functionality was contingent on continued service from OzVision, or that OzVision could or might discontinue service at any time. Had there been such a disclosure, Plaintiff Lauinger would not have purchased the Flir Cameras, or would not have purchased it on the same terms.

75. Plaintiff Lauinger and Class Members were injured as a result because Defendants intentionally rendered the Flir Cameras of Plaintiffs and Class Members non-functional, which caused Plaintiffs and Class Members to suffer a diminution in the value of their Flir Cameras.

76. On behalf of himself and other Class Members, Plaintiff Lauinger seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### COUNT V
### Violation Of New York General Business Law § 350

77. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

78. Plaintiff Lauinger brings this claim individually and on behalf of the members of the proposed Class against Defendants.

79. This claim is based on the following acts and omissions by Defendants: (i) failing to disclose that App support for the Flir Cameras was contingent on Defendants' contract with OzVision for P2P services, and that there was no guarantee that OzVision would continue to provide P2P services for Defendants.

80. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

81. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

82. Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

83. Defendants' false, misleading, and deceptive omissions of fact were and are directed towards consumers.

84. Defendants' false, misleading, and deceptive omissions of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

85. Defendants' false, misleading, and deceptive omissions of fact have resulted in consumer injury or harm to the public interest.

86. Plaintiff Lauinger reviewed the packaging and advertising for Flir Cameras, and there was no disclosure that P2P functionality was contingent on continued service from OzVision, or that OzVision could or might discontinue service at any time. Had there been such a disclosure, Plaintiff Lauinger would not have purchased the Flir Cameras, or would not have purchased it on the same terms.

87. As a result of Defendants' false, misleading, and deceptive omissions of fact, Plaintiff Lauinger and the Class have suffered and continue to suffer economic injury.

88. As a result of Defendants' violations, Plaintiff Lauinger and members of the Class have suffered damages due to said violations because they would not have purchased the Flir Cameras on the same terms if they had known that App support for the Flir Cameras was contingent on Defendants' contract with OzVision for P2P services, and there was no guarantee that OzVision would continue to provide P2P services for Defendants.

89. On behalf of himself and other members of the Class, Plaintiff Lauinger seeks to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Class as follows:

(a) For an order certifying the nationwide Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as Class representatives; and naming Plaintiffs' attorneys as Class Counsel representing the Class Members;

(b) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c) For an order awarding equitable relief in amounts to be determined by the Court and/or jury;

(d) For injunctive relief enjoining the illegal acts detailed herein;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiffs their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: April 30, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Joel D. Smith*
         Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:   ltfisher@bursor.com
              jsmith@bursor.com

*Attorneys for Plaintiffs*