UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD SOO, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>LOREX CORPORATION, et al.,<br><br>        Defendants. | Case No. 20-cv-01437-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 33 and 34 |

Gerald Soo and Matthew Lauinger (collectively, "Plaintiffs") bring this putative class action against Lorex Corporation ("Lorex") and Dahua Technology USA Inc. ("Dahua") (collectively, "Defendants") alleging violations of various state common law claims, violations of California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200 *et seq.*, New York's Consumer Protection Act ("CPA"), General Business Law § 349, and New York's false advertising law ("FAL"), General Business Law § 350. Defendants' motion to compel arbitration and stay discovery is now pending before the Court, as well as Defendants' motion to dismiss Plaintiffs' first amended complaint ("FAC").[1] After careful consideration of the parties' briefing, and having had the benefit of oral argument on July 23, 2020 regarding both motions, the Court DENIES the motion to compel arbitration and stay discovery. Defendants have failed to prove by a preponderance of the evidence that Plaintiffs agreed to arbitrate. The Court GRANTS in part and DENIES in part Defendants' motion to dismiss and DENIES Defendants' motion to stay discovery.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11, 15.) The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d). (FAC ¶ 30.)

# BACKGROUND

Lorex, a subsidiary of Dahua, manufactured a variety of indoor and outdoor home security Flir cameras with the ability to upload security footage into cloud storage. (FAC, Dkt. No. 21 ¶¶ 1-2.)[2] The cameras also offered a "Rapid Recap" feature, with which users could see a condensed, time-stamped video of activity observed by the camera. (*Id.*) The cameras' cloud storage and Rapid Recap features were made possible by applications ("Apps") managed by Lorex. (*Id.* ¶¶ 6-8.) After selling its Flir cameras since 2015, on August 15, 2019 Lorex announced it was changing technology providers for the cameras' Apps. (*Id.* ¶ 10.) As a result, the Flir cameras could no longer connect to Apps, rendering them nonfunctional. (*Id.* ¶¶ 10-11.) Lorex then offered consumers a "Lorex Active Deterrence Wi-Fi replacement camera" or a Lorex.com store discount of US $120.00. (*Id.* ¶ 15.) Plaintiffs allege these are inadequate substitutes for their inoperative Flir cameras. (*Id.* ¶¶ 17-19.)

Gerald Soo, a California resident, subsequently filed this putative class action on behalf of purchasers of Flir cameras whose functionality was reduced by Lorex's August 2019 change in technology providers, alleging an unjust enrichment claim as well as a claim for violations of California's UCL. (Dkt. No. 1.) He then filed the FAC which added plaintiff Matthew Lauinger, a New York resident, a claim for trespass to chattel, and claims under New York's FAL and CPA. (Dkt. No. 21.) Defendants responded by filing the pending motion to compel arbitration and stay discovery, as well as the instant motion to dismiss Plaintiffs' FAC. (Dkt. Nos. 33 & 34.)

Defendants move to compel arbitration on the grounds that Plaintiffs accepted the terms of Lorex's Product Limited Warranty ("Warranty") included with the Flir cameras. In particular, they contend that the Warranty inside the box that Plaintiffs' cameras came in contains a binding arbitration provision and that the provision is enforceable and encompasses Plaintiffs' dispute. (Dkt. No. 34.) The motion is fully briefed, and the Court heard oral argument regarding it and Defendants' motion to dismiss on July 23, 2020. (Dkt. Nos. 36 & 39.)

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generate page numbers placed at the top of the documents.

**DISCUSSION**

**I.     Motion to Compel**

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). A party may petition a court to compel "arbitration [to] proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The United States Supreme Court recognizes a "liberal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Thus, a court must direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists; and (2) that "the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (noting that "[i]f the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms"). "[O]rdinary state-law principles that govern the formation of contracts" decide whether an agreement to arbitrate exists. *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

For purposes of this motion, it is undisputed that Lorex provides a hard copy of the Warranty in the box of every Flir camera it sells. (Dkt. No. 35 ¶ 8.) The Warranty is on a single page with three columns of text: two in English and one in French.[3] In the second column, in a section entitled "State/Provincial Law," the current version of the Warranty provides as follows:

---

[3] On the reverse of the two-sided, one-page Warranty are three columns, one in French and two in Spanish. They are translations of the Warranty's English text.

> **State/Provincial Law**
> The Purchaser may have other rights under state, provincial, or federal laws and where the whole or part of any item of this warranty is prohibited by such laws, it shall be deemed null and void. The remainder of the warranty shall remain in effect.
>
> The Products covered by this Warranty must be used as intended for the warranty to apply. Without limit to the foregoing, some states do not allow the exclusion or limitation of implied warranties or the limitation of incidental or consequential damages for certain products supplied to consumers or the limitation of liability for personal injury, so the above limitations, exclusions and disclaimers may be limited in their application to you. If implied warranties are not allowed to be excluded in their entirety for any reason, they will be limited to the duration of the applicable written warranty in this document. This warranty gives you specific legal rights which may vary depending on local law. By keeping this Product you agree to the terms of this Limited Warranty without objection or addition, and agree that binding arbitration shall be your sole remedy for any disputes over any elements of this Limited Warranty and waive any right to pursue joint, collective, or class claims in any form with respect to the Product, your purchase of the Product, this Limited Warranty and Lorex's performance hereunder.

(Dkt. No. 35-1 at 2.) The earlier versions do not differ in substance. (*See* Dkt. No. 35-1.) Every version of the Warranty produced by Lorex uses the same language in its arbitration provision; there is no revision or change across its 2014 to 2018 iterations. (*See* Dkt. No. 35-1; Dkt. No. 34 at 9.) Defendants contend that because the Warranty in the box advised Plaintiffs that if they kept the cameras they were agreeing to the Warranty as well as to binding arbitration, and Plaintiffs did not return their cameras, they agreed to arbitrate this dispute. Plaintiffs contend, in the first instance, they never agreed to the Warranty arbitration provision. Because the Court finds that neither Mr. Lauinger nor Mr. Soo assented to the arbitration provision, it need not address the remaining issues in Defendants' motion to compel.

### A. Mr. Lauinger Did Not Assent to Arbitration

The arbitration provision at issue presents a "shrinkwrap-license case," in which "the [contractual] terms at issue are typically provided inside the packaging of consumer goods." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 121 (2d Cir. 2012). Generally, a consumer does not manifest assent to the terms of a shrinkwrap-license at the time of purchase; "instead, the consumer manifests assent to the terms by later actions." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 428 (2d Cir. 2004) (citations omitted); *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996) ("A buyer may accept by performing the acts the vendor proposes to treat as acceptance."). Defendants rely on *Brower v. Gateway 2000*, 246 A.D.2d 246, 676 N.Y.2d 569 (S. Ct. App. Div. 1998), to support their argument that Mr. Lauinger, a New York resident, accepted the Warranty's terms, including the arbitration provision, by keeping the camera. *See*

*Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 994 (9th Cir. 2007) ("when (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state's highest court, but (3) there *is* relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.") (original emphasis).

In *Brower*, the plaintiffs purchased computers from Gateway.  *Brower*, 246 A.D.2d at 248.  In the materials in the computers' boxes was a copy of Gateway's "Standard Terms and Conditions."  *Id.*  The Conditions began with a "Note to the Customer" which provided "in slightly larger print than the remainder of the document in a box that spans the width of the page: 'This document contains Gateway 2000's Standard Terms and Conditions.  By keeping your Gateway 2000 computer system beyond thirty (30) days after the date of delivery, you accept these Terms and Conditions.'"  *Id.*  The Terms and Conditions contained, among other terms, an arbitration provision.  *Id.*  The court held that by keeping their computers beyond 30 days the plaintiffs agreed to the arbitration agreement.  *Id.* at 251.  "[I]t is only after the consumer has affirmatively retained the merchandise for more than 30 days—within which the consumer has presumably examined and even used the product(s) and read the agreement—that the contract has been effectuated . . . . no contract was formed here . . . until the merchandise was retained beyond the 30-day period."  *Id.*  Defendants argue that just as in *Brower*, Mr. Lauinger accepted the Warranty's terms, including the arbitration provision, by retaining the camera.  They further note that the same month he purchased the camera he made two calls to Lorex's service line and this conduct further supports a finding that he agreed to the Warranty's terms.

*Brower* does not compel the finding that Mr. Lauinger agreed to arbitration.  The "Terms and Conditions" in *Brower*, unlike the Warranty at issue here, gave the customer the "unqualified right" for 30 days "to return the merchandise, because the goods or terms are unsatisfactory or for no reason at all."  *Id*. at 252.  During those 30 days the customer "presumably examined and even used the product(s)."  *Id.* at 251.  No contract was formed until those 30 days of the unqualified right to return the product expired.  *Id.*  Lorex's warranty, unlike that in *Brower,* did not give the

customer any amount of time to examine the product, and the included written materials did give the consumer the right to return the camera. As Plaintiffs observe: "Defendants' instructions for acceptance also fail to state how long consumers have to return the product, where they are supposed to return it to or how the costs for return are supposed to be covered." (Dkt. No. 36 at 13.) At a minimum, without evidence that Mr. Lauinger had the right to return the camera and thus reject the arbitration provision there can be no agreement to arbitrate formed by "keeping the [camera.]" (Dkt. No. 35-1 at 2.)

The other cases upon which Defendants rely require the same conclusion. In each case the product manufacturer gave the consumer a certain amount of time to return the product before the contract was effectuated. *See Chamberlain v. LG Elecs. U.S.A., Inc.*, No. CV172046MWFPLAX, 2017 WL 3084270, at *3 (C.D. Cal. June 29, 2017) (explaining that under New York law, an "in the box" contract "results when the package is opened and the consumer uses the equipment for a specified period of time which is set forth in the written agreement.") (citations and alterations omitted); *Hill v. Gateway 2000, Inc*., 105 F.3d 1147, 1148 (7th Cir. 1997) (holding the plaintiffs accepted a "cash now, terms later" arbitration clause included in a "list of terms [] said to govern unless the customer return[ed] the computer within 30 days"); *Tsadilas v. Providian Nat. Bank,* 13 A.D.3d 190 (2004) (holding that consumer consented to arbitration agreement with credit card company by failing to opt out; thus, the agreement must have given the consumer the opportunity to "opt out"); *see also ProCD, Inc.*, 86 F.3d at 1452 (upholding shrinkwrap software license where the seller "proposed a contract that a buyer would accept by using the software after having an opportunity to read the license at leisure" and where buyer could not use the software "without indicating acceptance").

As Lorex has not proved that Mr. Lauinger had the opportunity to reject the proposed arbitration agreement, that is, to return the camera, it has not met its burden of showing Mr. Lauinger assented to the Warranty's arbitration provision and that an agreement to arbitrate was formed. The motion to compel Mr. Lauinger to arbitration must therefore be denied.

6

### B. Mr. Soo did not Assent to Arbitration

As the party seeking to compel arbitration, Defendants have the burden of demonstrating by a preponderance of the evidence that a valid agreement to arbitrate exists. *See Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (citations omitted). While a "party who is bound by a contract is bound by all its terms, whether or not the party was aware of them," it is axiomatic that a party must first be bound to the contract. *Id.* at 1284. An exception to this general rule of formation exists when "the writing does not appear to be a contract and the terms are not called to the attention of the recipient." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc*., 89 Cal. App. 4th 1042, 1049–50 (2001), *as modified* (June 8, 2001).

Defendants contend that under California law Mr. Soo agreed to arbitrate by keeping his five cameras. They argue further that Mr. Soo, unlike Mr. Lauinger, "activated" his Warranty online, further demonstrating that he accepted the arbitration provision in the Warranty. Defendants' argument is foreclosed by *Norcia*, 845 F.3d 1279.

In *Norcia*, the plaintiff purchased a Samsung phone. *Id.* at 1282. In the phone box was a Product Safety & Warranty Information brochure that, among other things, contained an arbitration provision encompassing all disputes with Samsung, even non-warranty disputes. *Id.* The provision stated that consumers could "opt out of the arbitration agreement by providing notice to Samsung within 30 calendar days of purchase, either through email or by calling a toll-free telephone number." *Id*. Samsung argued that because the plaintiff had not opted out, he was required to arbitrate his consumer class action. *Id.* at 1290. The Ninth Circuit, applying California law, disagreed. *Id.*

The court held that under California law, silence or inaction cannot constitute acceptance of an offer. *Id.* at 1284. The court also noted, however, that there are exceptions to that general rule. For example, "[a]n offeree's silence may be deemed to be consent to a contract when the offeree has a duty to respond to an offer and fails to act in the face of this duty." *Id.* at 1285 (citations omitted). A party may also be found to have consented when the party retains the

7

benefit offered. *Id.* However, even if one of these exceptions applies, a contract offeree's silence cannot constitute consent to a contract "when the offeree reasonably did not know that an offer had been made." *Id.* at 1285 (citation omitted). Applying these principles of California law, the Ninth Circuit held that Norcia had not agreed to the arbitration provision in the brochure. *Id.* at 1286. First, it was undisputed that Norcia had not done anything to affirmatively accept the offer, such as sign the brochure or affirmatively indicate his acceptance. *Id.* at 1285. Second, no exception to the general rule that silence cannot be deemed acceptance applied because Norcia had no duty to respond to Samsung's offer, and Samsung had not identified any benefit that Norcia retained given that the brochure stated that a consumer still was entitled to the limited warranty benefit even if the consumer opted out of the arbitration provision. *Id.* at 1286.

Importantly, the court also held that California courts had not yet enforced an "in-the-box" contract; instead, the courts had held that "even if a customer may be bound by an in-the-box contract under certain circumstances, such a contract is ineffective where the customer does not receive adequate notice of its existence." *Id.* at 1289-90. The court held that as Samsung's brochure was entitled "Product Safety & Warranty Information" "[a] reasonable person in Norcia's position would not be on notice that the brochure contained a freestanding obligation outside the scope of the warranty." *Id.* at 1289. Further, "[b]ecause an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious . . . Norcia was not bound by the arbitration provision even if the in-the-box contract were otherwise enforceable under California law." *Id.* at 1290 (internal quotations and citation omitted); *see also Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. ED CV 16-1953-DMG (KKx), 2017 WL 4082419, at *7 (C.D. Cal. Sept. 13, 2017), *aff'd*, 777 F. App'x 241 (9th Cir. 2019) (where a "[Warranty] Guide's cover page indicate[d] only that it contain[ed] health, safety, and warranty information" it could not bind the plaintiff to an arbitration provision appearing toward its end).

The same result follows here. Under California law, Mr. Soo's silence cannot be deemed acceptance. Neither exception to that general rule applies. Further, as in *Norcia*, Lorex placed the the arbitration agreement under the Warranty's "State/Provincial Law" section deep in another

8

paragraph addressing other matters such that a "reasonable person in [Mr. Soo's] position would not be on notice that the brochure contained a freestanding obligation outside the scope of the warranty." *Norcia*, 845 F.3d at 1289.

Defendants, citing *Pang v. Samsung Elecs. Am., Inc.*, 371 F. Supp. 3d 633 (N.D. Cal. 2019), contend that *Norcia* does not apply. In *Pang*, a consumer filed suit invoking the warranty governing her smartphone after its camera shattered within a month of purchase. *Id.* at 635. The court held that the plaintiff's invocation of Samsung's warranty within the arbitration agreement's 30-day opt out period and her continued attempts to enforce the warranty in the lawsuit put the "case outside the purview of *Norcia*." *Id.* at 639. The court reasoned that "the relevant question is whether a reasonable person in [the plaintiff's] position—i.e., one who invoked the warranty within 30-days of purchase—would be on notice of Samsung's offer to arbitrate." *Id.* Because the plaintiff "intended on making a warranty claim," it followed that she had "fair notice" she should read the warranty and its arbitration provision. *Id.* at 640. The court also expressed doubt that these facts put the case under the general rule that "'silence or inaction does not constitute acceptance of an offer'" given that the plaintiff had invoked the warranty. *Id.*

Even accepting *Pang's* reasoning, the facts here are far different. First, Mr. Soo is not bringing warranty claims. Second, he did not have 30 days to opt out of the arbitration agreement; as with Mr. Lauinger, the record does not support a finding that Mr. Soo had any right to return his cameras, let alone a right to return after having sufficient time to review Lorex's "offer." Third, Mr. Soo has never invoked Lorex's warranty. Mr. Soo's online activation of the Warranty does not support a finding that he had to or should have been aware of the arbitration agreement. As Lorex conceded at oral argument, Mr. Soo could have registered for warranty protection without ever seeing the in-the-box Warranty that contained the arbitration provision in the section entitled "State/Provincial Law." Unlike *Pang*, Mr. Soo's case holds no "meaningful dissimilar[ities]" from *Norcia* that would render its reasoning inapplicable. *Pang*, 371 F. Supp. 3d at 639-40. Defendants have not shown by a preponderance of the evidence that Mr. Soo assented to the Warranty's arbitration provision and thus the motion to compel Mr. Soo to arbitration must be denied.

9

**II.     Motions to Dismiss**

Defendants move to dismiss the following claims pursuant to Rule 12(b)(6): violations under the UCL, New York's CPA, and New York's FAL; as well as state law claims for trespass to chattels and unjust enrichment.

**A.  UCL Violations[4]**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Because the UCL is broadly remedial and written disjunctively, "it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (internal quotations and citation omitted).

**1.  Unfairness Under the UCL**

Practices may be deemed unfair under the UCL "even if not specifically proscribed by some other law." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1143 (2003) (internal quotations and citation omitted).  "Unfairness" is statutorily undefined; as such, courts apply three tests under the UCL's unfair prong when evaluating a defendant's practices.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1115 (N.D. Cal. 2015).  The first, the "tethering test," requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL [] be tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). The second "balancing test" asks whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* (citations omitted).  The third test "requires: (1) that the consumer injury be substantial; (2) that the injury not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one that consumers could not have reasonably avoided." *Id.* (citations omitted).

---

[4] On the basis that Plaintiffs argue they have sufficiently stated claims under the CPA and FAL for the same reasons they state a claim under the UCL's unfairness and fraudulence prongs, the Court considers Plaintiffs' CPA and FAL allegations where relevant in its discussion of the UCL claims. (*See* Dkt. No. 37 at 17.)

10

Plaintiffs' theory of unfairness relies on the "balancing test." (FAC at ¶ 60; Dkt. No. 37 at 11.) Under this theory, by "intentionally rendering" the Flir cameras non-functional and "providing an inadequate and temporary 'remedy[,]'" Defendants violated the UCL. (Dkt. No. 37 at 11.) Defendants respond that Plaintiffs impermissibly impute OzVision's cessation of service to Defendants. This argument, however, narrowly reads Plaintiffs' FAC. While OzVision "ceas[ed] to provide P2P functionality and services that were used by all Flir cameras[,]" Plaintiffs further allege that "Defendants changed technology providers knowing that such a decision would cause the Flir Cameras to cease functioning." (FAC ¶¶ 10-12.) Further, since changing providers Defendants "have not created their own P2P software to replace OzVision that would continue to provide support for Flir Cameras, or otherwise partnered with another third-party vendor." (FAC ¶ 13.) Therefore, construing the FAC in the light most favorable to Plaintiffs, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012), it is Defendants' decision to change technology providers without providing a substitute service that serves as the predicate conduct for which Defendants themselves may be subject to liability under the UCL. Furthermore, it was Defendants, not OzVision, who provided Plaintiffs with an allegedly inadequate remedy.

This conduct—intentionally rendering the cameras non-functional and providing an inadequate remedy—is pled such that it could plausibly outweigh the utility of this conduct to Defendants. Plaintiffs allege that Defendants financially benefitted from rendering the Flir cameras nonfunctional to the financial detriment of Plaintiff Soo and other class members, that Plaintiff Soo and others conferred a financial benefit to Defendants by purchasing the cameras and were later "deprived of the benefit of the bargain" with Defendants. (FAC ¶ 61.) As a result, Plaintiffs were forced to accept the lost value of their property, receive a replacement camera or store credit "worth less" than the value of the Flir cameras. (FAC ¶ 62.) This was "substantially injurious" to Plaintiffs. (FAC at ¶ 60).

At this stage of the pleadings, Plaintiffs sufficiently allege that Defendants' conduct was unfair under the UCL. The cost-benefit analysis the unfairness prong calls for is "not properly suited for resolution at the pleading stage," *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1117, and, as such, Defendants' motion to dismiss on this count is DENIED. *See also Grace v. Apple, Inc.*, No.

11

17-CV-00551, 2017 WL 3232464, at *15 (N.D. Cal. July 28, 2017) (holding that "[w]hile the benefits of Apple's conduct may ultimately outweigh the harm to consumers, this is a factual determination that cannot be made at this stage of the proceedings.").

### 2. Unlawfulness under the UCL

"An unlawful business practice or act within the meaning of the UCL is an act or practice, committed pursuant to business activity that is at the same time forbidden by law." *Pinel v. Aurora Loan Servs.*, LLC, 814 F. Supp. 2d 930, 937 (N.D. Cal. 2011) (internal quotation marks and citation omitted). The UCL's "unlawful" prong covers a wide range of conduct; among them, it makes violations of other laws independently actionable. *See CRST Van Expedited, Inc. v. Werner Enters, Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (internal quotation marks and citations omitted).

UCL claims under the unlawful prong "borrow[] violations of other laws . . . and make[] those unlawful practices actionable under the UCL." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Id.* Accordingly, UCL claims under the unlawful prong "stand or fall depending on the fate of the antecedent substantive causes of action." *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001). Defendants' motion to dismiss does not address this prong.

### 3. Fraudulence under the UCL

Typically, UCL claims alleging fraudulent business practices under the statute's third prong trigger a heightened pleading requirement; in addition to the general pleading requirements set forth in Rule 8, a plaintiff alleging fraud must allege "with particularity the circumstances constituting fraud." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016). Omissions can form the basis of a fraudulent prong UCL claim, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1112, and given the nature of an omission-based fraud in which a plaintiff alleges a failure to act rather than an affirmative act, it may be impossible to discern the precise moment at which a defendant failed to act. *See also MacDonald v. Ford Motor Company*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014). Accordingly, claims based on an omission "can succeed without the same level of specificity required by a normal fraud claim." *Id.* (internal quotations and citations omitted).

"For an omission to be actionable under the UCL, the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id.* (internal quotations and citations omitted). The failure to disclose a fact that a party has "no affirmative duty to disclose is not likely to deceive anyone within the meaning of the UCL." *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197, 1229 (N.D. Cal. 2014) (citations and alterations omitted). Nonetheless, there are four circumstances under which a defendant holds a duty to disclose: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.[5] *Id.*

Here, Plaintiffs' UCL fraud claim is predicated on Defendants' failure to disclose that App support for the Flir cameras was contingent on Defendants' contract with OzVision, and that there was no guarantee OzVision would continue to provide service for Defendants and the Flir cameras. (FAC ¶ 56.) Plaintiffs allege that had Defendants disclosed such a fact, Plaintiffs would not have purchased their Flir cameras at all or on the same terms. (*Id.* ¶ 66.) Accordingly, Plaintiffs have sufficiently pled the content of Defendants' omission and have alleged materiality by pleading they would not have purchased the cameras had the information regarding OzVision's contingent contract with Defendants been disclosed. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1113. Plaintiffs allege that Defendants made no mention of OzVision's contingent servicing of cameras on their packaging, or that OzVision could or might discontinue service at any time. (FAC ¶ 66.)

The Court agrees with Defendants, however, that the FAC's allegations do not plausibly support an inference that at the time they sold the cameras—and allegedly omitted to disclose if OzFunction discontinued service consumers would be out of luck—that Defendants knew that the

---

[5] A fact is deemed material and "obligates an exclusively knowledgeable defendant to disclose it [] if a 'reasonable consumer' would deem it important in determining how to act in the transaction at issue." *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d at 1229 (internal quotations, citations, and alterations omitted).

13

1  functionality issue existed. The FAC alleges that they knew it existed at the time the problem
2  arose, but it does not make any allegations regarding Defendants' knowledge at the time the
3  cameras were sold to Plaintiffs.[6] Accordingly, all of Plaintiffs' fraud-based claims must be
4  dismissed.

### B. Unjust Enrichment

The Ninth Circuit has recognized that while "there is not a standalone cause of action for 'unjust enrichment'" in California, the term "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotations and citations omitted). As such, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (internal quotations and citations omitted). Under California law, a cause of action for unjust enrichment may be pled as an independent claim—no underlying contract claim is required. *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2017 WL 4773426, at *9 (N.D. Cal. Oct. 23, 2017). Nonetheless, there must be an actionable wrong to furnish a basis for relief. *See Hill v. Roll Internat. Corp.*, 195 Cal. App. 4th 1295, 1307 (2011).

Plaintiffs allege that Defendants have been unjustly enriched by retaining revenues from

---

[6] As with the UCL, omissions are cognizable under New York's CPA, which requires a plaintiff to plead sufficient factual content to illustrate that: (1) the defendant has engaged in an act or practice that is deceptive or misleading in a material way; (2) the plaintiff has suffered injury by reason thereof; and (3) the deceptive act or practice is consumer oriented." *In re Sling Media Slingbox Advertising Litigation*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (internal quotations and citations omitted). A plaintiff may state a claim under the FAL by satisfying the same elements. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *see also Quiroz v. Beaverton Foods, Inc.,* No. 17CV7348NGGJO, 2019 WL 1473088, at *6 (E.D.N.Y. Mar. 31, 2019). "Both affirmative representations and omissions may qualify as deceptive or misleading acts or practices," and omissions are actionable where "[a] business alone possesses material information that is relevant to the consumer and fails to provide this information." *In re Sling Media Slingbox Advertising Litigation,* 202 F. Supp. 3d at 359. As with the UCL, a material claim "is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Bildstein v. MasterCard Intern. Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004). Further, a deceptive practice "need not reach the level of common-law fraud to be actionable under section 349." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (internal quotations and citations omitted). Nonetheless, Plaintiffs fail to state a claim under the CPA or FAL for the same reason Plaintiffs' UCL claim failed: the FAC's allegations do not plausibly support an inference that Defendants knew a functionality issue existed at the time they sold the cameras.

14

Plaintiffs' purchased Flir cameras, whose retention is "unjust and inequitable" because Defendants rendered the Flir cameras non-functional. (FAC ¶ 50.) Taking Plaintiffs' factual allegations as true, the failure of Defendants' replacement program to properly compensate Plaintiffs for the lost value of their cameras with adequate replacement cameras or a comparable store credit may sustain a claim for unjust enrichment at the motion to dismiss stage.[7] (FAC ¶ 51.)

### C. Trespass to Chattel

Under California law, trespass to chattels lies "where an intentional interference with the possession of personal property has proximately caused injury." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003). Regarding computer systems or "similar device[s]," California law requires that plaintiffs plead with factual particularity that the purported trespass: "(1) caused physical damage to the personal property, (2) impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the use of personal property for a substantial time." *Fields v. Wise Media, LLC*, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013).

Defendants argue that Plaintiffs have not sufficiently pled a trespass to chattels claim on the basis that it is OzVision, rather than Defendants, who rendered Plaintiffs' cameras nonfunctional. However, for reasons discussed earlier, reading the FAC in the light most favorable to Plaintiffs, the FAC alleges sufficiently that Defendants' conduct animates its causes of action, including the claim for trespass of chattels because Defendants intentionally eliminated App support for the Flir cameras. (FAC at ¶ 59.)

*Grace*, 2017 WL 3232464, at *11, is instructive. In *Grace*, the plaintiffs alleged that the loss of FaceTime on older-model iPhones "substantially harmed the functioning" of the iPhone devices, which "significantly impaired the devices' condition, quality, and value." *Id.* at *11. *Grace* found that the complaint sufficiently alleged that FaceTime was integral to the intended function of the iPhone 4 and 4S devices given the alleged prominence FaceTime enjoyed as both a heavily advertised feature of the iPhone models, as well as how the plaintiffs themselves used FaceTime on a "daily basis." *Id.* Because Apple revoked FaceTime as a functionality from

---

[7] Plaintiffs do not oppose dismissal of the unjust enrichment claim under New York law. (Dkt. No. 37 at 17.)

15

iPhone 4 and 4S users, the court held that the plaintiffs suffered a "significant decrease in the 'condition, quality, or value'" of their iPhones that supported a trespass claim. *Id.* at *12-13.

As Apple disabled FaceTime in *Grace*, Defendants changed the Flir cameras' technology providers and robbed users of the cameras' Rapid Reshot and cloud storage functionalities. As *Grace*'s iPhone owners were given a choice between continuing to use an outmoded iOS or transition to iOS7 and "regain FaceTime but suffer lost functionality in other significant ways," Plaintiffs were confronted with an incomparable camera replacement or insufficient reimbursement, and as such suffered injury. For this reason, Plaintiffs' claim for trespass to chattels survives at the motion to dismiss stage.[8]

### D. Nationwide Class Allegations

The two named plaintiffs reside in New York and California and thus were harmed in those states. They nonetheless bring all of their claims—common law, New York specific and California specific—on behalf of a nationwide class. Defendants argue that Plaintiffs do not have standing to bring state law claims on behalf of residents of the other 48 states "because Soo and Lauinger do not and cannot allege that they suffered any injury under the laws of a state where they do not reside and did not purchase a camera." (Dkt. No. 33 at 21.)

While the Ninth Circuit has not definitively answered whether named plaintiffs have standing to pursue class claims under the common laws of states to which the named plaintiffs have no connection, district courts in this Circuit routinely hold that they do not. *See, e.g., In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2020 WL 1066934, at *10 (N.D. Cal. Mar. 5, 2020*)*; *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1073 (S.D. Cal. 2020); *Sponchiado v. Apple, Inc.*, No. 18-CV-07533-HSG, 2019 WL 6117482, at *7 (N.D. Cal. Nov. 18, 2019); *Van*

---

[8] Under New York law, "[t]he essential elements of trespass to chattels are (1) intent, (2) physical interference with (3) possession (4) resulting in harm." *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 283 (S.D.N.Y. 2014) (internal quotations and citations omitted). A trespasser is liable when the trespass "diminishes the condition, quality, or value of personal property." *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 250 (S.D.N.Y. 2000), *aff'd as modified*, 356 F.3d 393 (2d Cir. 2004) (citing *EBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1071 (N.D. Cal. 2000)). "The quality or value of personal property may be 'diminished even though it is not physically damaged by defendant's conduct.'" *Id.* Given the similarity in the standards applied to a trespass to chattels claim under New York to those in California, Plaintiffs' trespass to chattels claim survives under New York law on the same factual bases.

16

*Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-CV-03889-JD, 2018 WL 1116715, at *1-2 (N.D. Cal. Mar. 1, 2018); *see also Corcoran v. CVS Health Corp.*, 169 F.Supp.3d 970, 990 (N.D. Cal. 2016) (noting that "[c]ourts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce") (internal quotation marks and citation omitted); *United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA*, 74 F. Supp. 3d 1052, 1078 (N.D. Cal. 2014) (collecting cases).

As the *In re Glutmetza* court reasoned, "'the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate.'" 2020 WL 1066934, at *10 (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015)). There the alleged injury was the overcharge of each purchase of Glumetza; "[s]o, the scope of standing [was] limited to the locations of the purchases." *Id.* Here, the alleged injury is the overcharge of each camera purchase or/and the offer of an inadequate remedy; the scope of standing is therefore limited to the locations of the camera purchases or the offer of an inadequate remedy. For the named plaintiffs those locations are California and New York.

Plaintiffs do not explain how they have standing to pursue claims under other states' laws; instead, their opposition merely objects to the Court deciding the standing issue at this juncture. When to address this issue—at the pleadings stage or class certification—is one of discretion. *See Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *15 (N.D. Cal. June 1, 2018). As this Court has noted: "Resolving the question now as a matter of case management is consistent with Federal Rule of Civil Procedure 1 which requires the courts to construe the Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* at 16; *see also Sponchiado*, 2019 WL 6117482, at *7 (noting that deferring consideration of the standing analysis until the class certification stage would permit the plaintiffs lengthy and costly nationwide discovery). Plaintiffs do not identify any discovery that might permit them to bring claims under the laws of states to which they have no connection; to defer ruling and permit nationwide discovery would therefore merely waste time and money.

Plaintiffs' reliance on *Melendres*, 784 F.3d 1254, does not persuade the Court otherwise. As another court in this Circuit observed:

17

> Unlike the instant case, *Melendres* did not confront a situation where named plaintiffs brought claims under the laws of multiple states where they did not reside and where they were not injured: in *Melendres*, all plaintiffs alleged that they suffered the same constitutional injury, only in different factual circumstances. Here, because Plaintiffs bring claims under the laws of multiple states (some antitrust and some not), Plaintiffs technically invoke different legally protected interests. *See* Restatement (Second) of Torts § 7 cmt. a (1965) (noting that injury involves an actionable invasion of a legally protected interest, while harm denotes personal loss or detriment).
>
> The Court is here called upon to examine whether the named Plaintiffs have standing to bring certain claims, not standing "to obtain relief for unnamed class members" for the same injury. *See id.* at 1261-62; see also *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (Article III must be measured claim-by-claim). Plaintiffs must show they have standing for each claim they raise, and Plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection.

*Jones v. Micron Tech Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019); *see also In re Glumetza*, 2020 WL 1066934, at *10 (explaining why *Melendres* does not require the trial court to delay deciding whether a named plaintiff has standing to bring claims under the laws of states to which the plaintiff has no connection). Accordingly, to the extent Plaintiffs bring claims under the laws of any state other than California and New York, the claims are dismissed.

In their opposition to the motion to dismiss, Plaintiffs argue that the California UCL claim applies to camera purchases outside of California. As Defendants' motion to dismiss argued only that the named plaintiffs lacked standing to bring claims under the laws of states other than where they resided, and Defendants did not argue that it was improper for Plaintiffs to sustain a nationwide class under the UCL until their reply brief, the Court will not address the issue at this time. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.") (citation omitted).

## CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration and stay discovery is denied. Because Plaintiffs do not oppose dismissal of their New York unjust enrichment claim, it is dismissed without leave to amend. The Court also grants Defendants' motion to dismiss the

18

fraud-based claims with leave to amend.  The common law claims brought under the laws of states other than California and New York are dismissed for lack of standing.  The motion to dismiss is otherwise denied.

Any amended complaint shall be filed within 21 days of this Order.  Further, if Plaintiffs amend their complaint they should specify which California and New York claims they bring on behalf of a nationwide class.  While the FAC states that it is all claims, Plaintiffs' opposition suggests they may only be bringing the UCL claim on behalf of a nationwide class.

The Court will hold an initial case management conference on Thursday, September 24 at 1:30 p.m.  An updated joint case management conference statement is due one week in advance.

This order disposes of Docket Nos. 33 and 34.

**IT IS SO ORDERED.**

Dated: September 8, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

19